UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
REMSEN FUNDING CORPORATION,             :
                    Plaintiff,          :
                                        :       06 Civ. 15265(DLC)
          -v-                           :
                                        :       OPINION AND ORDER
OCEAN WEST HOLDING CORPORATION,         :
                    Defendant.          :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:

Anton J. Borovina
Borovina & Marullo PLLC
445 Broad Hollow Road
Suite 334
Melville, New York 11747

For Defendant:

Jon Schuyler Brooks
Philips Nizer LLP
666 Fifth Avenue
New York, New York 10103

DENISE COTE, District Judge:

   The plaintiff Remsen Funding Corporation of New York ("RFC") filed this action for breach of contract and declaratory judgment against the defendant Ocean West Holding Corporation ("OWHC"), now known as AskMeNow Inc. ("AMN"), on December 18, 2006.[1] Permission to file an amended complaint ("Complaint") was

---

[1] In January 2006, RFC had filed essentially the same action. The January 2006 action was purportedly settled and discontinued in June 2006. The plaintiff moved on December 7, 2006 to reopen

granted pursuant to a stipulation and order of July 25, 2007.[2]
In the Complaint, RFC seeks damages and equitable relief
principally for the defendant's refusal to issue warrant shares
to RFC pursuant to a 2002 agreement between the parties. For
the following reasons, the motion to dismiss is denied.

FACTS

The following facts are taken from the Complaint, unless
otherwise noted. By written agreement ("Agreement") dated
November 15, 2002, OWHC engaged RFC to assist it in seeking
"capital and/or a capital partner." OWHC agreed to provide RFC
with compensation, including warrants to purchase 300,000 shares
of common stock of OWHC within a fixed price range.[3] The
Agreement provided that the "warrants shall be good for a period
of five years from the date of issue." It provides that OWHC
would cause their

> registration to take effect without cost to [RFC], the
> warrant holder. . . . The term of the warrant shall be
> extended in the event that the Company fails to
> register the shares. In addition, [OWHC] agrees to

---

that action, and its motion was denied for failure to comply
with the Southern District of New York's Local Rule of Civil
Procedure 7.1.

[2] On July 16, the petitioner filed a motion to amend the summons
and complaint. This motion is denied as moot in light of the
stipulation of July 18.

[3] It also required OWHC to provide additional warrants upon RFC's
satisfaction of a certain condition, but those warrants are not
at issue here.

> make good on any loss as a result of their failure to initiate registration of the necessary shares. [OWHC] agrees to extend the exercise period of the warrants in accordance with any delays in registration of the underlying securities due to any action or inaction on the part of [OWHC], its representatives or the State or Federal governing body involved in such a registration.

The Agreement was drafted by RFC's counsel and signed by both parties.

On September 11, 2003, OWHC issued a common stock purchase warrant ("Warrant") to RFC. The Warrant gave RFC the right to purchase 300,000 shares of OWHC common stock ("Warrant Shares") at a purchase price of 25 cents per share, the bottom of the price range specified in the Agreement, for an exercise price of $75,000. The Warrant states that it "is being issued in connection with the Remsen Funding Corporation Agreement . . ., dated as of August 15, 2002,[4] between the Company and the Holder and is subject to its terms." The Warrant stated that it would terminate on August 15, 2007, which is three months shy of the fifth anniversary of the Agreement. The Warrant also stated that it "shall constitute a contract under the laws and jurisdiction of California and for all purposes shall be construed in accordance with and governed by the laws of

---

[4] The Agreement was dated November 15, 2002.

3

said state without regard to its conflict of law, principles or rules."

On September 14, 2005, OWHC registered 18,647,276 shares of its common stock for resale. It did not give RFC notice of this registration filing and did not include or refer to the Warrant Shares. OWHC refused to issue the Warrant Shares.

On or about "December 26, 2007," OWHC amended the common stock registration statement to include the Warrant Shares. According to the Complaint, however, it continues to deny that the Agreement and Warrant are valid obligations. Since the time of the amended registration, OWHC has delayed registration of the Warrant Shares by refusing to give timely, truthful, complete, or accurate responses to comments made by the Securities and Exchange Commission ("SEC").

DISCUSSION

I. Subject Matter Jurisdiction

The first issue to be addressed is whether there is subject matter jurisdiction over this action. Parties seeking to invoke diversity jurisdiction must be of diverse citizenship and the amount in controversy must exceed the sum or value of $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a). The parties agree that they are diverse.

The amount in controversy requirement of Section 1332(a) is determined at the time the complaint is filed. Hall v. EarthLink Network, Inc., 396 F.3d 500, 506 (2d Cir. 2005). There is a presumption that the face of a complaint is a good faith representation of the actual amount in controversy, which presumption can only be rebutted by showing to "a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) (citation omitted); see also Hall, 396 F.3d at 507 n.5 (citation omitted).

"The Supreme Court has held that, in actions for declaratory or injunctive relief, which . . . are equitable in nature, the amount in controversy is measured by the value of the object of the litigation." DiTolla v. Doral Dental IPA of New York, 469 F.3d 271, 276 (2d Cir. 2006) (citing Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977)). "Different state claims brought by a single plaintiff may be aggregated for purposes of satisfying the amount-in-controversy requirement." Colavito, 438 F.3d at 221.

The defendant argues that the amount in controversy does not reach $75,000 because "even upon the facts as alleged by RFC . . . RFC never exercised the alleged Warrant, and therefore never had the ability to possess -- let alone trade or sell --

5

the underlying unregistered shares." At this stage in the litigation, it is not necessary to determine the proper measure of damages, or even whether a $75,000 payment was required to exercise the Warrant. Even if damages were measured by the value of the unexercised Warrant, rather than "the highest net value of the Warrant Shares after RFC's payment of the Exercise Price," as the plaintiff demands, the information that the parties have provided does not establish "to a legal certainty" that the value of the unexercised warrant could not exceed $75,000. See R.A. Mackie & Co., L.P. v. Petrocorp Inc., 329 F.Supp.2d 477, 511-12 (S.D.N.Y. Aug. 9, 2004) (recognizing that calculating an unexercised warrant's value is ordinarily a "complicated exercise, requiring the application of finance models to determine the present value of the right to purchase stock at a fixed price at some future time."). The Rule 12(b)(1) motion is therefore denied.

II. Personal Jurisdiction

The defendant next argues that the Complaint should be dismissed for lack of personal jurisdiction. RFC pled personal jurisdiction over the defendant pursuant to New York's Civil Practice Law and Rules Section 302(a)(1) ("CPLR § 302(a)(1)").[5]

---

[5] CPLR § 301(a)(1) provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over

6

In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state. D.H. Blair & Co., Inc., v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(a); Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000). Any exercise of personal jurisdiction over the defendants must also comport with the Due Process Clause. D.H. Blair, 462 F.3d at 104; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (citation omitted). Where there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam). Parties can consent to personal

---

any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state.

jurisdiction by means of a forum selection clause, and forum selection clauses are routinely enforced where (1) the clause was "reasonably communicated to the parties" and (2) the clause was not "obtained through fraud or overreaching," and (3) there has been no clear showing that "enforcement would be unreasonable and unjust." D.H. Blair, 462 F.3d at 103 (citation omitted).

The Agreement's forum selection clause resolves this prong of the defendant's motion. The Agreement's forum selection clause unambiguously subjects the defendant to personal jurisdiction in the Southern District of New York. Under New York law, the interpretation of an unambiguous contract is a question of law for a court to decide. Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000). The Agreement contains the following language:

> The Laws of the State of New York shall govern this Agreement. Furthermore, any dispute arising out of this Agreement will be specifically subject to the Venue and Jurisdiction of the Southern District Federal Courts regardless of the domicile of the parties or their convenience. The parties hereby recognize the commercial excellence of the jurisdiction of the Southern District Federal Court.

Considering the forum selection clause in context, in particular that it follows a New York choice of law clause, the phrase "Southern District Federal Courts" refers to a federal court in New York. There is no reference in the

8

Agreement to another state that could render the Agreement's forum selection clause ambiguous. The defendant has not attempted to show that the Agreement's forum selection clause is unenforceable for any of these reasons identified in D.H. Blair, 462 F.3d at 103.

The defendant's effort to invoke the choice of law clause in the Warrant to create ambiguity in the Agreement's forum selection clause fails. The defendant, by signing the Agreement, therefore consented to personal jurisdiction in this district.[6]

III. Rule 12(b)(6)

AMN argues that the Complaint should be dismissed for failure to state a claim upon which relief may be granted. Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F .3d 586, 591 (2d Cir. 2006). Rule 8 is

---

[6] By agreeing to the language of the forum selection clause, the defendant consented to laying venue, as well as personal jurisdiction, in this district. See Phillips v. Audio Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007). The defendant's motion to dismiss for improper venue is denied.

9

fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005). When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007) (citing Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1968-69 (2007)).

AMN argues that: (1) Count I's specific performance claim is moot because it seeks registration of already-registered shares; (2) Count II's declaratory judgment claim fails because the plaintiff does not allege it paid $75,000 in consideration for the Warrant and because the term in which the Warrant could

be exercised has expired; and (3) Count III misstates the plaintiff's damages; and (4) all claims are barred by the doctrine of laches.

With respect to the defendant's first argument, the Complaint does allege that the Warrant Shares were registered.[7] RFC contends that it is seeking additional relief in Count I, namely, that the defendant be compelled to issue the Warrant Shares to RFC. As pled, Count I does not seek this additional relief. Count I is therefore dismissed without prejudice to repleading.

AMN's second argument, however, fails. Count II seeks a declaration that the Warrant is a valid and enforceable obligation that may be exercised. Additionally, although the Warrant states that the exercise period expires as of August 15, 2007, the Agreement provides that the warrants arising thereunder "shall be good for a period of five years from the date of issue." Therefore, RFC may litigate its claim that the five-year period should run from the date the Warrant issues.

With respect to the defendant's third argument, it is not possible to determine damages at this stage in the litigation for the reasons discussed above. The motion to dismiss Count III is therefore denied.

---

[7] The Complaint alleges that the Warrant Shares were registered "on or about December 26, 2007." This date is clearly in error.

Finally, the defendant has not shown that the plaintiff's claims are barred by laches. To succeed on the equitable defense of laches, a defendant must "establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." <u>Veltri v. Bldg. Serv. 32B-J Pension Fund</u>, 393 F.3d 318, 326 (2d Cir. 2004) (citation omitted). An inquiry regarding the availability of the laches defense turns on fairness. "A party asserting a laches defense must show that the plaintiff has inexcusably slept on its rights so as to make a decree against the defendant unfair." <u>Merrill Lynch Inv. Managers v. Optibase, Ltd.</u>, 337 F.3d 125, 132 (2d Cir. 2003) (citation omitted).

The defendant argues that laches should bar this action because RFC knew of the underlying facts as early as September 30, 2004, when OWHC released an annual report with a list of warrants that did not include the Warrant. It also argues that it was public knowledge that OWHC was the subject of a reverse merger in 2005 and that RFC makes no allegation that it attempted to confirm the validity of the Warrant prior to the merger. The defendant asks the Court to take judicial notice of its September 2004 annual report and of the 2005 reverse merger.

Even if the Court were to take judicial notice of these facts, which are not documented in attachments to the defendant's moving papers, the defendant has not shown through

this motion that it is entitled to dismissal based on laches. The defendant has not made a sufficient showing of prejudice to permit application of the laches doctrine to any count. Additionally, Count III cannot be dismissed pursuant to the doctrine of laches because it is a claim for damages and was filed within the six-year statute of limitations governing contract claims. See N.Y. C.P.L.R. § 213(2); Oneida County v. Oneida Indian Nation of N.Y. State, 470 U.S. 226, 244 n.16 (1985) (noting that the "application of the equitable defense of laches in an action at law would be novel indeed"); Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997) (holding that laches would not bar a legal claim under 42 U.S.C. § 1983); Ecumenical Task Force of Niagara Frontier, Inc. v. Love Canal Area Revitalization Agency, 583 N.Y.S.2d 859, 862 (App. Div. 1992) ("Because laches is a purely equitable defense, it will not serve to bar recovery in an action at law commenced within the limitations period.").

CONCLUSION

The motion to dismiss is granted in part. Count I is

dismissed without prejudice. RFC may replead its first claim within 20 days.

SO ORDERED:

Dated: New York, New York
November 1, 2007

_____
DENISE COTE
United States District Judge